UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY and WESTLANDS WATER DISTRICT, <br><br> **Plaintiffs,** <br><br> v. <br><br> SALLY JEWELL, *et al.*, <br><br> **Defendants,** <br><br><br> THE HOOPA VALLEY TRIBE; THE YUROK TRIBE; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; and INSTITUTE FOR FISHERIES RESOURCES, <br><br> **Defendant-Intervenors.** | CASE NO.  1:15-CV-01290-LJO-GSA <br><br> **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD (Doc. 75)** |

# I. INTRODUCTION

This case concerns the U.S. Bureau of Reclamation's ("Reclamation" or "the Bureau") decision

to make certain "Flow Augmentation" releases ("FARs") of water in August 2014 ("2014 FARs") and

2015 ("2015 FARs") from Lewiston Dam, a feature of the Trinity River Division ("TRD") of the

Central Valley Project ("CVP"). Doc. 1. The stated purpose of FARs is to "reduce the risk of an adult fish kill in the lower Klamath River." Environmental Assessment, 2015 Lower Klamath River Late-Summer Flow Augmentation from Lewiston Dam, EA-15-04-NCAO (August 2015) ("2015 EA"), Administrative Record ("AR") 1189; AR 5170 (Decision Memorandum Re 2014 FARs). Plaintiffs, the San Luis & Delta Mendota Water Authority ("Authority") and Westlands Water District ("Westlands"), allege that by approving and implementing the 2014 and 2015 FARs, Reclamation and its parent agency, the U.S. Department of the Interior ("Interior")[1] (collectively, "Federal Defendants"), acted in excess of existing statutory authorities; violated reclamation law by delivering water as part of the 2015 FARs pursuant to the second proviso of Section 2 of the Act of August 12, 1955, Pub. L. No. 84-386, 69 Stat. 719 ("1955 Act"), without first entering into a contract for delivery of that water that meets the requirements of reclamation law and policy; violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, by, among other things, approving and implementing the 2014 and 2015 FARs without first preparing an Environmental Impact Statement ("EIS"); and violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("MSA"), 16 U.S.C. §§ 1801 e *seq.*, by implementing the 2015 FARs without first engaging in required consultation with relevant federal wildlife agencies. Doc. 1.

Plaintiffs filed suit in this Court on August 21, 2015. *Id.* The AR was lodged March 11, 2016. Doc. 71. Plaintiff moved to complete the AR, seeking inclusion of 82 documents. Doc. 75. Defendant Intervenors do not oppose the motion. Doc. 84. Federal Defendants have agreed to add a number of the documents to the record and point out that certain other documents are already in the record, but oppose inclusion of the remainder. Docs. 85 & 85-1. Plaintiffs replied. Doc. 87. Having reviewed the briefing in light of the entire record, the Court concludes that the matter is suitable for decision on the papers pursuant to Local Rule 230(g).

---

[1] The Complaint also names as Defendants in their official capacities: Sally Jewell, the Secretary of the U.S. Department of the Interior; Estevan Lopez, Commissioner of the Bureau; and David Murrillo, Regional Director of the Bureau's Mid-Pacific Region. Doc. 1.

# II. <u>STANDARD OF DECISION</u>

In an APA case, the scope of judicial review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973). The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citation omitted). Rather, "'[t]he whole record' includes everything that was before the agency pertaining to the merits of the decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)(internal citation omitted). "The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.3d at 555 (emphasis added).

> An incomplete record must be viewed as a fictional account of the actual decisionmaking process. When it appears the agency has relied on documents or materials not included in the record, supplementation is appropriate.

*Portland Audubon*, 984 F.2d at 1548 (internal quotations and citations omitted). "A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant facts." *Asarco, Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). "

However, the record does not include "every scrap of paper that could or might have been created" on a subject. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002).

> A broad application of the phrase "before the agency" would undermine the value of judicial review: Interpreting the word "before" so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless. Thus, to ensure fair review of an agency decision, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.

*Pac. Sh ores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal citations and quotations omitted). The record certainly need not include documents that became available after the agency's decision had already been made ("post-decisional" documents). *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 555 (1978) (judicial review is "limited [] by the time at which the decision was made....").

An agency's designation and certification of the administrative record is entitled to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007). This presumption requires courts to presume that public officials have properly discharged their official duties. *Id.* It is the burden of the party seeking to supplement the record to overcome this presumption by producing clear evidence to the contrary. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041.

### III. DISCUSSION

**A.   Plaintiffs' Requests to Order Reclamation to Include Specific Documents in the AR.**

Plaintiffs request inclusion of 82 documents in the AR. Federal Defendants have agreed to the addition of some of those documents, have pointed out that others already are in the AR, and dispute inclusion of the remainder. Plaintiffs attempt to group the disputed documents into various categories, and the Parties' briefing largely follows these groupings. However, because some of the documents fall into multiple groups, the Court has evaluated each document in turn in the following table, noting the nature of the document, the Parties' arguments for and against inclusion, and providing a relevant ruling, cross-referencing rulings wherever appropriate.

| # | Document[2] | Plaintiffs' Argument for Inclusion | Federal Defendants' Response | Court's Ruling |
|---|---|---|---|---|
| 1. | Reclamation will add this document to the record. | | | |
| 2. | Reclamation will add this document to the record. | | | |
| 3. | December 2014 Draft Long-Term Plan for | Cited in Reclamation's decision | This document was not considered by | Plaintiffs argue that this document, a draft of a long term plan for protecting salmonids in the Lower Klamath River, should be included in the AR because it was cited |

---

[2] The documents in dispute are presented as attachments to the Electronic Case File Documents ("Doc.") 82 and 83.

| | | | | |
|---|---|---|---|---|
| | Protecting Late Summer Adult Salmon in the Lower Klamath River | document(s). | the decisionmaker or relied on for the 2014/2015 FARs. | in at least one Reclamation decision document. While this document is mentioned in the EA, this is not dispositive. Mere "references" to documents in the AR, even in the decision document, do not indicate they were necessarily considered by the decisionmaker. *See Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1240-41 (E.D. Cal. 2013) (distinguishing between "citations" to documents and mere references thereto). Here, the EA merely references the existence of a parallel long-term planning process, *see* AR 1310, 1345, and does not cite to any long-term planning document for any factual proposition material to the relevant decision. Therefore, Plaintiffs have not "identif[ied] reasonable, non-speculative grounds for [their] belief that the documents were considered by the decision makers." *Pinnacle Armor*, 923 F. Supp. 2d at 1239 (internal citation and quotation omitted). The motion is DENIED as to this document. |
| 4. | April 2015 Draft Long- Term Plan for Protecting Late Summer Adult Salmon in the Lower Klamath River July 14, 2015 Reclamation's Notice of Intent to Prepare EIS for Long-Term Plan | Cited in Reclamation's decision document(s). | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | Like Document #3, this document is also a draft of a long-term plan to protect salmonids in the Lower Klamath. For the same reasons set forth above for Document #3, the motion is DENIED as to this document. |
| 5. | July 14, 2015 Reclamation's Notice of Intent to Prepare notice for EIS for Long Term Plan | Cited in Reclamation's decision document(s). | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | Like Document #3 and #4, this document concerns long-term planning for protection of salmonids in the Lower Klamath. For the same reasons set forth above for Document #3, the motion is DENIED as to this document. |
| 6. | Reclamation will add this document to the record. | | | |
| 7. | Evidence of consultation under the Magnuson-Stevens Act for the Sacramento River species in the 2009 Biological Opinion | Cited in Reclamation's decision document(s). | There is no "evidence of consultation" to add. The text in the EA and Finding of No Significant Impact ("FONSI") is self-explanatory and any related documents are already in the AR. | Plaintiffs' assertion that "evidence of consultation under the Magnuson Stevens Act" should be added to the record is grounded in the following text in the EA and FONSI for the 2015 FARs: Reclamation consulted under the Magnuson-Stevens Act (MSA) for the Sacramento River species in the 2009 Biological Opinion (BiOp) and since there was a determination, concurred with by NMFS, that because the proposed action is contemplated within the drought exception procedures as described in the 2009 NMFS BiOp it will not result in violation of the incidental take limit in the NMFS 2009 BiOp, nor jeopardize the continued existence of the listed species or destroy or adversely modify their designated critical habitats no further consultation under the MSA is needed. As to the coho, the MSA will be conducted as part of the ongoing consultation on the coho. Additionally, as determined in the EA, Reclamation did not identify any adverse effects from the proposed action on essential fish habitat. |

| | | | | AR 1348; AR 1358. |
|---|---|---|---|---|
| | | | | This paragraph indicates that MSA consultation is not required, in part because NMFS concurred that the proposed action will not result in a violation of the incidental take limit set forth under an ESA biological opinion prepared by NMFS in 2009 addressing impacts of the CVP and State Water Project ("SWP") on salmonids and other species. While it is unclear from this motion to what extent ESA concurrence letters are or should be included in the record, Plaintiffs do not request inclusion of the ESA concurrence letters. Rather, they request MSA consultation documentation. The EA/FONSI suggest that no such documents exist and Plaintiffs present no evidence to the contrary. The agency cannot include in the record non-existent documents. |
| | | | | The motion is DENIED as to this request. |
| 8. | Evidence of plan for consultation under the Magnuson-Stevens Act for Trinity River species | Cited in Reclamation's decision document(s). | There is no "evidence of consultation" to add. The text in the EA and FONSI is self-explanatory and any related documents are already in the AR. | For the same reasons set forth above for Document #7, the motion is DENIED as to this request. |
| 9. | Aug. 21, 2003 Federal Defendants' Notice Regarding Decision to Release Supplemental Water  Includes two exhibits:  (1) Memorandum regarding "Release of up to 50,000 acre- feet of water from the Trinity River Division for fishery purposes" dated Aug. 15, 2003; and  (2) the final "Environmental Assessment for Late- Summer 2003 Preventative Trinity River Flow Releases for | Document regarding prior FARs; Document relevant to claimed authority for the 2015 FARs. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document is a notice related to FARs implemented in 2013.  **Ruling 9A:** As to the first ground for inclusion – that this is a "document regarding prior FARs" – Plaintiffs maintain that inclusion in the AR of this document regarding pre-2014 FARs is required by a Department of Interior Guidance document regarding the preparation of administrative records. Plaintiffs point out that the Guidance, issued June 27, 2006, suggests inclusion of "relevant, supporting, documents" and provides as an example of such "[d]ocuments contained in previous ARs that were relied upon or considered in the decision-making process." Doc. 82 at 11 (citing Declaration of Rebecca Akroyd ("Akroyd Decl."), Ex. 9 (Doc. 78) at 6-7). Plaintiffs argue that because the 2015 EA and 2015 FONSI describe the pre-2014 releases and "appear to have been informed by analysis and information contained in the prior environmental documents," this document must be included in the AR. Doc. 82 at 12. This ignores the suggestion in the June 27, 2006 Guidance that documents in previous ARs be included only if they were "relied upon or considered in the decision-making process." Even assuming the 2015 EA and FONSI were "informed" by analyses and information in the prior environmental documents, Plaintiffs fail to identify reasonable, non-speculative grounds for their belief that the documents were <u>actually</u> considered (directly or indirectly) by the decision makers. Plaintiffs do not specify the nature of how the documents inform |

| | | | | |
|---|---|---|---|---|
| | "Protection of Fall Run Chinook Salmon" dated Aug. 20, 2003 | | | one another nor whether the AR lacks independent documents upon which the same or similar conclusions could have been formed. The motion to add this document on this ground is DENIED.<br><br>**Ruling 9B:** As to the second ground for inclusion – that this document is relevant to the claimed authority for the 2015 FARs – Plaintiffs argue that the AR does not contain documents regarding certain sources of authority for the 2014 and 2015 FARs cited in the 2015 EA. *See* Doc. 82 at 12-13. Plaintiffs further argue that "[i]f Reclamation is indeed relying on these statutes as authority for the 2015 FARS, then information regarding Reclamation's consultation under, implementation of programs regarding, or interpretation of the statutes as they apply to FARs should be in the record." *Id.* at 13. Plaintiffs request that the Court order Federal Defendant to complete the record with relevant documents regarding the claimed sources of authority. The Court agrees with Federal Defendants that Plaintiffs have offered "no evidence that Reclamation decision-makers [] independently consider and reconsider whether there is legal authority to release water with each subsequent release, including the relevant releases here, rather than being advised by counsel when necessary." Doc. 85 at 10. To the extent Plaintiffs seek documents that provide advice of counsel, such documents would be privileged. Plaintiffs have failed to demonstrate that relevant, non-privileged documents <u>considered by the decisionmaker</u> exist within this category. The motion to add this document on this ground is DENIED. |
| 10. | Aug. 20, 2004 Federal Defendants' Notice of Supplemental Flows Includes two exhibits: (1) the Finding of No Significant Impact / Environmental Assessment for the Purchase of Water from the Sacramento River Water Contractors Association and Supplemental Fall 2004 Releases to the Trinity River, dated Aug. 19, 2004; and (2) the final Environmental Assessment for Purchase of Water from the Sacramento River Water Contractors Association and | Document regarding prior FARs; Document relevant to claimed authority for the 2015 FARs. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This is an environmental document pertaining to FARs implemented in 2004. For the same reasons set forth above for Document #9 in Ruling 9A and Ruling 9B, the motion is DENIED as to this document. |

| | | | | |
|---|---|---|---|---|
| | Supplemental Fall 2004 Releases to the Trinity River, dated Aug. 19, 2004 | | | |
| 11. | Aug. 2012 Final Environmental Assessment, 2012 Lower Klamath River Late Summer Flow Augmentation; and<br><br>Aug. 10, 2012 Finding of No Significant Impact, 2012 Lower Klamath River Late Summer Flow Augmentation | Document regarding prior FARs; Document relevant to claimed authority for the 2015 FARs; Source document directly or indirectly relied upon as basis for 2013, and then 2015 Environmental Assessment. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns FARs implemented in 2012. For the same reasons set forth above for Document #9 in Ruling 9A and Ruling 9B, the motion is DENIED as to this document on the first two grounds offered.<br><br>**Ruling 11:** As to the third ground for inclusion – that this is a "[s]ource document directly or indirectly relied upon as basis for 2013, and then 2015 Environmental Assessment" – Plaintiffs point to *High Sierra Hikers Association v. U.S. Department of the Interior*, No. C-09-4621 JCS, 2011 WL 2531138 (N.D. Cal. 2011). In that case, the agency defendant agreed that summaries of monthly stock use reports were properly part of the AR in that case, but refused to include underlying documents, arguing they were duplicative. *Id.* at *1. The district court ordered the underlying "source documents" included in the record because "at a minimum" they were "indirectly relied upon" and contained detailed information that was not in the summaries." *Id.* at *6.<br><br>Plaintiffs here maintain that Document # 11 (and related documents) should be included in the AR because "in many instances" they contain language identical to the language in the 2015 EA and FONSI. Even assuming this is true, this does not present circumstances analogous to those in *High Sierra Hikers*, where the agency admitted to relying on underlying documents to create a summary that was part of the AR. If the commonality of language between the 2015 EA and FONSI and prior documents is somehow legally relevant to the merits of this case, Plaintiffs may offer the prior documents for consideration on judicial notice for appropriate purposes (i.e., not for the truth of the matters asserted therein). The motion is DENIED as to this document on this ground. |
| 12. | Aug. 2013 Environmental Assessment, 2013 Lower Klamath River Late-Summer Flow Augmentation from Lewiston Dam<br><br>Aug. 6, 2013 Finding of No Significant Impact, 2013 Lower Klamath River Late-Summer Flow Augmentation from Lewiston Dam | Document regarding prior FARs; Document relevant to claimed authority for the 2015 FARs; Source document directly or indirectly relied upon as basis for 2015 Environmental Assessment. | | This document concerns FARs implemented in 2013. For the same reasons set forth above for Document #9 in Ruling 9A and Ruling 9B and for Document #11 in Ruling 11, the motion is DENIED as to this document on all three grounds offered. |
| 13. | Jan. 30, 1995 | Document | | This document relates to one of the claimed legal |

8

| | | | |
|---|---|---|---|
| Letter from the Bureau of Reclamation to the Trinity County Board of Supervisors re: 50,000 Acre-Feet | relevant to claimed authority for the 2015 FARs; Source document directly or indirectly relied upon as basis for 2015 Environmental Assessment; Other document directly or indirectly considered by the agency. | | authorities for implementing FARs. For the same reasons set forth above for Document #9 in Ruling 9B and for Document #11 in Ruling 11, the motion is DENIED as to this document on the first two grounds offered.<br><br>As to Plaintiffs' contention that this document should otherwise be included in the AR because it was "directly or indirectly considered by Reclamation," the only basis offered by Plaintiffs' for including this specific document under this rationale is that it was produced to Plaintiffs as part of a Freedom of Information Act ("FOIA") response that requested "all records regarding emergency NEPA consultation on the flow augmentation releases made in 2014." *See* Doc. 82 at 14. But, a FOIA production is an "entirely discrete legal concept that bears no relation to the [preparation of] an administrative record [] for a court's review under the APA." *State of Del. Dep't of Natural Resources and Envtl. Control v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 535, 544 (D. Del. 2010). Absent clear evidence to the contrary, an agency's production of documents under FOIA does not necessarily mean they were "considered" for purposes of compiling an administrative record. *See Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 55-57 (D.D.C. 2003), *vacated on other grounds sub nom. Fund For Animals, Inc. v. Hogan,* 428 F.3d 1059 (D.C. Cir. 2005) (where plaintiffs sought inclusion in the record of numerous documents secured by way of a FOIA request, it is the agency that is in the best position to determine which documents it considered and enjoys a presumption that it properly designated the record absent clear evidence to the contrary). Plaintiffs have made no clear showing that would warrant this Court disregarding the presumption of proper designation of the AR. The motion is DENIED as to this document on this ground. |
| 14. | Reclamation will add this document to the record. | | |
| 15. | Sept. 13, 2014 Yurok Fisheries Program Technical Memorandum re: Ich | Other document directly or indirectly considered by the agency. | This email is actually dated September 24, 2014, which post- dates the decision. This is an update to an earlier version of the same document that is already in the record at AR 65, 68. | Defendants argue that the document should not be included in the AR because it postdates the decision to release the additional water. Although this document bears the date September 13, 2014, it contains data about fish disease prevalence in the Lower Klamath that runs up through and including September 29, 2014, which post dates Federal Defendants' formal announcement on September 16, 2014, that Reclamation would release additional water (above and beyond the level of releases announced in late August, *see* AR 5177-5181) to target a flow rate of approximately 5,000 cfs in the lower Klamath River for seven days. *See* AR 5250-53.<br><br>Plaintiffs suggest that Document # 15[3] should nevertheless be part of the record because, while it post-dates the start of the 2014 FARs, it pre-dates the start of the 2015 FARs. Doc. 87 at 7. This, of course, would be true of any document produced in the aftermath of the 2014 FARs. Presumably, due to its inclusion of |

---

[3] Plaintiffs appear to mis-label Document # 15 as Document # 14 on page 7 of their Reply.

| | | | | |
|---|---|---|---|---|
| | | | | information that post-dates the targeting of 5,000 cfs flows in the Lower Klamath, Document # 15 speaks to the effectiveness (or lack thereof) of the supplemental releases. But, this does not mean it was considered by the decisionmaker. To the extent efficacy of the flows is an issue in this case, Federal Defendants' record must stand or fall on the information included in the record or shown to be worthy of supplementation. As to this document, Plaintiffs have again failed to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." *Pinnacle Armor*, 923 F. Supp. 2d at 1239. Nor is there evidence that the decision to target flows to 5,000 cfs, *see* Press Release dated September 16, 2014 (AR 5250), was contingent upon collection of the information contained in Document # 15, which might have justified inclusion of the document in the record for the 2014 FARs. The motion is DENIED as to this document on this ground. |
| 16. | June 18, 2015 Joint Announcement re: Shasta Temperature Management Plan | Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. The relevant data was considered separately and is in the AR. | This document announces "key components" of Reclamation's plan to manage temperature control issues stemming from a "much smaller volume of cold water in Shasta Reservoir." Plaintiffs argue generally that this document was "directly or indirectly considered by the agency," and, somewhat more specifically, that "while the [AR] currently contains several documents regarding Reclamation's operation of the CVP for temperature management in 2015, several other documents are missing. These include letters to and from Reclamation regarding 2015 operations, which at a minimum, where indirectly considered relevant to the 2015 FARs." Doc. 82 at 14. The Court is left to guess how this argument might satisfy Plaintiffs' burden to establish "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers," particularly in light of Federal Defendants' undisputed assertion that the relevant data reflected in this document was considered separately and is already included in the AR. The mere fact that Plaintiffs allege the FARs hampered Reclamation's ability to manage temperature in the Sacramento River watershed is insufficient. The motion is DENIED as to this document on this ground. |
| 17. | July 1, 2015 Letter from National Marine Fisheries Service to Reclamation and California Department of Water Resources re: 2015 Contingency Plan | Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. The relevant data was considered separately and is in the AR. | This document outlines a contingency plan for operations (including Shasta temperature management) in light of ongoing drought conditions. Plaintiffs offer the same rationale for its inclusion in the record as they did for Document # 16, which fails for the same reasons articulated in the ruling for Document #16. The motion is DENIED as to this document on this ground. |
| 18. | July 7, 2015 Letter from State Water Resources Control Board to Ron Milligan re: | Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the | This document is the State Water Resources Control Board's approval of Reclamation's revised Shasta Reservoir Temperature Management Plan. Doc. 82-3 at pp. 33-39 of 140 (Document #17). Plaintiffs offer the same rationale for its inclusion in the record as they did for Document # 16, which fails for the same reasons |

| | | | | |
|---|---|---|---|---|
| | Sacramento River Temperature Management Plan | | 2014/2015 FARs. The relevant data was considered separately and is in the AR. | articulated in the ruling for Document #16. The motion is DENIED as to this document on this ground. |
| 19. | June 25, 2015 Reclamation Revised Sacramento River Temperature Management Plan – June 2015 | Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. The relevant data was considered separately and is in the AR. | This document articulates the Bureau's Revised Sacramento River Water Temperature Management Plan. Doc. 82-3 at pp. 41-50 of 140 (Document #17). Plaintiffs offer the same rationale for its inclusion in the record as they did for Document # 16, which fails for the same reasons articulated in the ruling for Document #16. The motion is DENIED as to this document on this ground. |
| 20. | Reclamation will add this document to the record. | | | |
| 21. | Reclamation will add this document to the record. | | | |
| 22. | Reclamation will add this document to the record. | | | |
| 23. | Reclamation will add this document to the record. | | | |
| 24. | Reclamation will add this document to the record. | | | |
| 25. | Aug. 22, 2014 Memorandum from B. Person to Files re: Decision Rationale – Augmenting Flows in the Lower Klamath River During August and September of 2014 | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | An identical version of this document is already in the record at AR 52. | Although in Reply Plaintiffs continue to include this in the range of documents in dispute, *see* Doc. 87 at 5:27-28, Plaintiffs provide no specific reply to Federal Defendants' undisputed assertion that an identical version of this document is already in the AR. Therefore, the motion is DENIED as moot as to this document. |
| 26. | May 12, 2010 Memorandum from N. Sutley, Counsel on Environmental Quality ("CEQ") to Department Heads re: Emergencies and the National Environmental Policy Act | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This is a CEQ Guidance document cited by Federal Defendants' in their opposition to Plaintiffs' motion for a temporary restraining order regarding the 2014 FARs filed in this case. The document outlines a "step-by-step process for determining the appropriate path forward for the NEPA environmental review of all actions proposed in response to an emergency situation." Plaintiffs offer no evidence that Reclamation directly or indirectly considered this document in making its decision to make the 2014 or 2015 FARs. That Federal Defendants' counsel relied upon the document in making their legal arguments is not dispositive. Absent any other showing, the motion is DENIED as to this document on the grounds presented. |
| 27. | Reclamation will add this document to the record. | | | |
| 28. | Reclamation will add this document to the record. | | | |
| 29. | June 26, 2003 Memorandum from Doug | Document regarding prior FARs; | This document was not considered by | This document concerns FARs proposed in 2003. The first ground offered for inclusion of this document is addressed in Ruling 9A, which found that the mere fact |

| | | | | |
|---|---|---|---|---|
| | Schleusner, Executive Director, Trinity River Restoration Program re: DRAFT Implementation Strategy, Potential 2003 Fall Flow Releases. | Other document directly or indirectly considered by the agency. | the decision-maker or relied on for the 2014/2015 FARs. | that a document pertains to prior FARs is insufficient to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." Plaintiffs offer no independent, specific basis for the inclusion of this document. *See* Doc. 82 at 12. The motion to add this document on this ground is DENIED.<br><br>As to the second ground, Plaintiffs again offer no specific basis to believe that this document was considered, either directly or indirectly, by the agency, *see* Doc. 82 at 14, and no such basis is apparent from the face of the document. The motion to add this document on this ground is DENIED. |
| 30. | Aug. 11, 2004 Letter from M. Ryan to I. Lagomarsino re: Request for Concurrence with a Determination of "Not Likely to Adversely Affect" for Proposed Supplemental Water Releases to the Trinity River for August and September 2004 | Document regarding prior FARs. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. | This document concerns FARs proposed in 2004. The ground offered for inclusion of this document is addressed in Ruling 9A, which found that the mere fact that a document pertains to prior FARs is insufficient to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." Plaintiffs offer no independent, specific basis for the inclusion of this document, and none is apparent from the face of the document. *See* Doc. 82 at 12. The motion to add this document on this ground is DENIED. |
| 31. | Aug. 20, 2004 Letter from R. McInnis to M. Ryan re: ESA consultation | Document regarding prior FARs. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. | This document also concerns FARs implemented in 2004The ground offered for inclusion of this document is addressed in Ruling 9A, which found that the mere fact that a document pertains to prior FARs is insufficient to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." Plaintiffs offer no independent, specific basis for the inclusion of this document, and none is apparent from the face of the document. *See* Doc. 82 at 12. The motion to add this document on this ground is DENIED. |
| 32. | June 25, 2010 E-mail chain beginning with e-mail from S. Naman to J. Simondet, and including related e-mails between NMFS and Reclamation staff and others re: Fall Flow Augmentation/Meeting Agenda and Materials | Document regarding prior FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. | This document discusses implementation FARs proposed in 2010. The first ground offered for inclusion of this document is addressed in Ruling 9A, which found that the mere fact that a document pertains to prior FARs is insufficient to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." Plaintiffs offer no independent, specific basis for the inclusion of this document. *See* Doc. 82 at 12. The motion to add this document on this ground is DENIED.<br><br>As to the second ground, Plaintiffs again offer no specific basis to believe that this document was considered, either directly or indirectly, by the agency, *see* Doc. 82 at 14, and no such basis is apparent from the face of the document. The motion to add this document on this ground is DENIED. |
| 33. | Aug. 27, 2014 E-mail chain beginning with e-mail from R. Grimes to D. Reck | Document generated in the course of an agency's process for | This is a heavily redacted email chain regarding CEQ discussion and the redacted | This document, as redacted, does not appear to contain any content that is material to any claim in this case. Plaintiffs do not argue otherwise in reply, except to contend, generally, that Federal Defendants should be required to produce a privilege log, an assertion that is |

| | | | | |
|---|---|---|---|---|
| | Re: Emergency Lower Klamath River Flow Augmentation – Late Summer 2014 | arriving at its decision; Other document directly or indirectly considered by the agency. | portions are privileged and thus not part of the record. The non-redacted portions are not relevant to the 2014/2015 FARs and thus were not considered by the decision-maker. | addressed separately below. The motion to add this document on the offered ground is DENIED. |
| 34. | May 31, 2012 Memorandum from Fall Flow Subgroup to B. Person re: 2012 Fall Flow Release Reccomendation (sic) | Document regarding prior FARs; Document generated in the course of an agency's process for arriving at its decision; Source document directly or indirectly relied upon as basis for 2015 Environmental Assessment; Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. This document is specific to the 2012 FARs only. | This document concerns FARs recommended for 2012. As to the first ground for inclusion – that this is a document regarding prior FARs – Ruling 9A explained that this rationale, standing alone, fails to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." *Pinnacle Armor*, 923 F. Supp. 2d at 1239 (internal citation and quotation omitted). The motion is DENIED as to this document on this ground.<br><br>As to the second ground – that this is a document generated in the course of an agency's process for arriving at its decision – Plaintiffs offer absolutely no explanation of why this document, dated May 31, 2012, was generated in Reclamation's process for arriving at its decision on either of the FARs at issue in this case. The motion is DENIED as to this document on this ground.<br><br>As to the third ground – that this is a source document directly or indirectly relied upon as a basis for the 2015 EA -- as Ruling 11 explained, *High Sierra Hikers* stands for the proposition that the AR should be expanded to include "source documents" containing data used to produce other documents in the AR. 2011 WL 2531138, at *6. But Plaintiffs argue Document # 34 is a "source document" simply because it includes language/criteria that have only been slightly modified in the 2015 EA. *High Sierra Hikers* is therefore not controlling. Overlapping language between a so-called "source" document and a decision document does not necessarily mean the "source" document was considered, even indirectly, by decisionmakers. The motion is DENIED as to this document on this ground.<br><br>As to the fourth rationale – that this document was otherwise directly or indirectly considered by the agency -- Plaintiffs fail to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." *Pinnacle Armor*, 923 F. Supp. 2d at 1239 (internal citation and quotation omitted). The motion is DENIED as to this document on this ground. |
| 35. | July 1, 1974 Memorandum from Assistant Regional Solicitor | Document relevant to claimed authority for | This document was not considered by the decision- | This document concerns a claimed authority for the FARs. As to the first ground for inclusion– that this document is relevant to the claimed authority for the 2015 FARs – as explained in Ruling 9B, Plaintiffs again |

| | | | | |
|---|---|---|---|---|
| | to Regional Director, Bureau of Reclamation, Sacramento, re: "Request for opinion re authority of the Secretary of the Interior to alter present functions and accomplishments of Trinity River Division, "Central Valley Project" | the 2015 FARs; Other document directly or indirectly considered by the agency. | maker or relied on for the 2014/2015 FARs. | offer "no evidence that Reclamation decision-makers [] independently consider and reconsider whether there is legal authority to release water with each subsequent release, including the relevant releases here, rather than being advised by counsel when necessary." Doc. 85 at 10. To the extent Plaintiffs seek documents that provide advice of counsel, such documents would be privileged. Plaintiffs have failed to demonstrate that relevant, non-privileged documents considered by the decisionmaker exist within this category. The motion to add this document on this ground is DENIED.<br><br>As to the second ground, plaintiffs again offer no specific basis to believe that this document was considered, either directly or indirectly, by the agency, see Doc. 82 at 14, and no such basis is apparent from the face of the document. The motion to add this document on this ground is DENIED. |
| 36. | Jan. 21, 1977 Memorandum from Regional Solicitor to Field Supervisor, Division of Ecological Services, USFWS, re: "Trinity River Division, CVP—Reconsideration of July 1, 1974 Memorandum to Regional Director, Bureau of Reclamation, Concerning Section 2 of the Trinity River Division Act" | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decision-maker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. For the same reasons set forth above for Document #35, the motion is DENIED as to this document. |
| 37. | May 18, 2015 Letter from R. Milligan to M. Rea re: Contingency Plan for Water Year (WY) 2015 Pursuant to Reasonable and Prudent Alternative (RPA) Action 1.2.3.C of the 2009 Coordinated Long-term Operation of the Central Valley Project (CVP) and State Water Project (SWP) Biological Opinion (NMFS | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document, a request for concurrence from NMFS that drought contingency plans are consistent with actions set forth in NMFS's 2009 Biological Opinion on the Coordinated Long-Term Operation of the CVP and SWP, is closely related to Documents ## 16-19.<br><br>As to the first ground for inclusion – that this is a document generated in the course of an agency's process for arriving at its decision – Plaintiffs offer absolutely no explanation of why this document was "generated in Reclamation's process for arriving at its decision on either of the FARs at issue in this case," when facially it has to do with a separate ESA compliance process. The motion is DENIED as to this document on this ground.<br><br>As to the second rationale, Plaintiffs argue generally that this document was "directly or indirectly considered by the agency," but fail to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion is DENIED as to this document on this ground. |

| | | | | |
|---|---|---|---|---|
| | 2009 BiOp) | | | |
| 38. | Reclamation will add this document to the record. | | | |
| 39. | Information / Briefing Memorandum for the Commissioner of Reclamation from Brian Person re: Contract with Humboldt County for 50,000 acre-feet of water in Trinity Reservoir | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. As to the first ground for inclusion– that this document is relevant to the claimed authority for the 2015 FARs – as explained in Ruling 9B, Plaintiffs again offered "no evidence that Reclamation decision-makers [] independently consider and reconsider whether there is legal authority to release water with each subsequent release, including the relevant releases here, rather than being advised by counsel when necessary." Doc. 85 at 10. Finally, to the extent Plaintiffs are seeking documents that provide advice of counsel, such documents would be privileged. Plaintiffs have failed to demonstrate that relevant, non-privileged documents <u>considered by the decisionmaker</u> exist within this category. The motion to add this document on this ground is DENIED.<br><br>As to the second ground, plaintiffs again offer no specific basis to believe that this document was considered, either directly or indirectly, by the agency, *see* Doc. 82 at 14, and no such basis is apparent from the face of the document. The motion to add this document on this ground is DENIED. |
| 40. | Mar. 21, 2011 Draft Briefing Paper for Michael Connor, Commissioner re: 50,000 acre-feet of water in 1959 Humboldt contract | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. For the same reasons set forth above for Document #39, the motion is DENIED as to this document. |
| 41. | Jan. 22, 2013 Draft Briefing Paper for David Murillo, Regional Director | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. For the same reasons set forth above for Document #39, the motion is DENIED as to this document. |
| 42. | Dec. 14, 2010 Draft Briefing Paper for Michael Connor, Reclamation Commissioner | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. For the same reasons set forth above for Document #39, the motion is DENIED as to this document. |
| 43. | Reclamation will add this document to the record. | | | |
| 44. | Draft Policy Statement Outline | Document relevant to | This document was not | This document concerns a claimed authority for the FARs. For the same reasons set forth above for |

| | | | | |
|---|---|---|---|---|
| | – Humboldt County 50,000 Acre- Feet Contract | claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | considered by the decisionmaker or relied on for the 2014/2015 FARs. | Document #39, the motion is DENIED as to this document. |
| 45. | Reclamation will add this document to the record. | | | |
| 46 | Aug. 9, 2004 Letter from V. Whitney, Division Chief, to Humboldt County Board of Supervisors, c/o Honorable Jill Geist, re: "Complaint Against the Bureau of Reclamation Regarding the Trinity River Division of the Central Valley Project in Trinity County | Document relevant to claimed authority for the 2015 FARs; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document concerns a claimed authority for the FARs. For the same reasons set forth above for Document #35, the motion is DENIED as to this document. |
| 47. | Yurok boat dance_20140822_steady ramdown.xlsx | E-mail in the record identifies document as attachment; attachment is missing from the record. | This document was superseded by a later email that provided an update and the email and attachment will be added to the record. | Plaintiffs' sole argument for inclusion of this document is that it is an attachment to an email that has been included in the AR. Federal Defendants maintain that the underlying email was superseded by a later email that provided an update and that email and attachment will be added to the record. Plaintiffs offer no specific reply. Plaintiffs therefore fail to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion is DENIED as to this document. |
| 48. | Reclamation asserts this document is already in the record and Plaintiffs do not dispute this assertion in Reply. | | | |
| 49. | Reclamation will add this document to the record. | | | |
| 50. | Reclamation asserts this document is already in the record and Plaintiffs do not dispute this assertion in Reply. | | | |
| 51. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 52. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 53. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 54. | Reclamation asserts this document is already in the record and Plaintiffs do not dispute this assertion in Reply. | | | |
| 55. | Reclamation asserts this document is already in the record and Plaintiffs do not dispute this assertion in Reply. | | | |
| 56. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 57. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 58. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 59. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 60. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 61. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 62. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 63. | 150810_NCRWQCB_C OMMENTS_USBR_2015 _Lower_Klamath _Flows.pdf | E-mail in the record identifies document as attachment; attachment is | Reclamation claims this is a duplicate of AR 63. | Plaintiffs' sole argument for inclusion of this document is that it is an attachment to an email that has been included in the AR. Federal Defendants maintain that the underlying document is already included in the AR at AR Doc. 63 and has determined it should be removed. Plaintiffs offer no specific reply. Plaintiffs therefore fail |

| | | | | |
|---|---|---|---|---|
| | | missing from the record. | | to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion is DENIED as to this document. |
| 64. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 65. | Reclamation will add this document (a missing attachment) to the record. | | | |
| 66. | 2015.08.20 PC_BOR Lower Klamath Flow Augmentation EIS Scoping.pdf | E-mail in the record identifies document as attachment; attachment is missing from the record. | This document was not considered in regards to the 2014 or 2015 FARs and will be removed. | Plaintiffs' sole argument for inclusion of this document is that it is an attachment to an email that has been included in the AR. Federal Defendants maintain that the underlying document was included in the AR in error and has determined it should be removed. Plaintiffs offer no specific reply, other than to persist in its generic argument that attachments are missing. Doc. 87 at 6. Plaintiffs therefore fail to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion is DENIED as to this document. |
| 67. | Declaration of Donald Reck in Support of Federal Defendants' Opposition to Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunctions | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document post-dates the final agency action is properly not part of the record. action and | This document, a Declaration produced in the context of this litigation, is dated August 26, 2014, which post-dates the August 22, 2014 Press Release announcing the 2014 FARs. Plaintiffs argue that Document # 67 nevertheless belongs in the AR because it discusses NEPA compliance for the 2014 FARs and because Reclamation's decisions regarding NEPA compliance continued beyond the date the FARs began. While it is true that this document does suggest that Reclamation (1) was invoking NEPA emergency procedures and (2) intended to complete NEPA environmental review after the FARs began, there is no evidence in the record suggesting the agency generated Document # 67 in the course of arriving at its decision (either its initial decision to implement the FARs or any subsequent decision to issue a related environmental document) or considered Document # 67 either directly or indirectly. That decision-making continued past the start of the FARs does not mean that <u>every</u> document mentioning the FARs generated after initiation of the FARs should become part of the AR. This would eviscerate the general rule that "'[t]he whole record' includes everything that was before the agency pertaining to the merits of the decision." *Portland Audubon*, 984 F.2d at 1548. Again, Plaintiffs have failed to articulate a non-speculative basis to believe this document was considered, directly or indirectly, by the agency. The motion to add this document to the AR is therefore DENIED. |
| 68. | Declaration of Brian Person in Support of Federal Defendants' Opposition to Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document post-dates the final agency action and is properly not part of the record. | This is a Declaration filed in this litigation on August 26, 2014. Plaintiffs concede that this document post-dates the beginning of the 2014 FARs, put argue that because it pre-dates the start of the 2015 FARs, was before Reclamation when it made its decision regarding the 2015 FARs, and was germane to that decision, it should be part of the AR. Again, plaintiffs fail to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion to add this document to the AR is therefore DENIED. |
| 69. | Declaration of Ronald Milligan in Support of | Document generated in the course of | This document post-dates the final agency | Document # 69 is yet another Declaration filed in this litigation, dated August 26, 2014. As with Document # 68, Plaintiffs argue that, while this document does post- |

| | | | | |
|---|---|---|---|---|
| | Federal Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction | an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | action and is properly not part of the record. | date the beginning of the 2014 FARs, it pre-dates the start of the 2015 FARs, was before Reclamation when it made its decision regarding the 2015 FARs, and was germane to that decision. Again, Plaintiffs fail to offer "reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." The motion to add this document to the AR is therefore DENIED. |
| 70. | Reclamation will add this document to the record. | | | |
| 71. | Reclamation will add this document to the record. | | | |
| 72. | July 24, 2015 E-mail chain beginning with email from T. Washburn to numerous recipients, and including attachments, re: Additional data requested | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014 FARs. This document concerns only the upper Sacramento River. | This is an email pertaining to temperature control in the upper Sacramento River. As with Document # 16 and related documents, the mere fact that Plaintiffs allege the FARs hampered Reclamation's ability to manage temperature in the Sacramento River watershed is insufficient to sweep all related documents into the AR in this case. The motion is DENIED as to this document. |
| 73. | March 20, 2015 E-mail chain beginning with email from S. Fry to numerous recipients, and including attachment, re: Final Draft ESA Project Description for Apr- Sept 2015 drought operations | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. The only mention of the Trinity River in this document is a reference regarding consultation with the Tribes. | This is another email pertaining to drought operations for the CVP. The Court has reviewed this document in its entirety and agrees with Federal Defendants that nothing therein indicates it was considered directly or indirectly by the agency. The motion is DENIED as to this document. |
| 74. | August 11, 2015 E-mail chain beginning with email from P. Zedonis to G. Yip and S. Naman, and including attachments, re: Fall Flow Action-2015 Draft Letters /Bio Review | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. | This document appears to already be in the record. *See* AR 1095; *see also* Doc. 85 at 6:15-16. The motion is therefore moot as to this document. |
| 75. | Reclamation asserts this document is already in the record and Plaintiffs do not dispute this assertion in Reply | | | |
| 76. | June 25, 2015 E-mail chain beginning with email from R. Milligan to M. Rea, and | Document generated in the course of an agency's process for arriving at its | This document was not considered by the decisionmaker or relied on for | This document is an email related to a letter that is related to Document # 37, which all concern temperature management in the upper Sacramento River.<br><br>For the same reasons the motion for inclusion was denied as to Document # 37, it is DENIED as to document 76. . |

18

| | | | | |
|---|---|---|---|---|
| | including attachments, re: ETA on package transmittal? | decision; Other document directly or indirectly considered by the agency. | the 2014/2015 FARs. | |
| 77. | Reclamation will add this document to the record. | | | |
| 78. | Reclamation will add this document to the record. | | | |
| 79. | Reclamation will add this document to the record. | | | |
| 80. | Aug. 19, 2015 E-mail from P. Zedonis to NMFS staff, re: Water Resources Fall Flows 2015 | Document generated in the course of an agency's process for arriving at its decision. | This document was not considered by the decisionmaker or relied on for the 2014/2015 FARs. It provides NMFS information about the decision for use in the future. | Federal Defendants maintain that this document does nothing more than provide information to NMFS for NMFS's use in future analyses. Plaintiffs do not specifically respond to this assertion in Reply. It is Plaintiffs' burden to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision makers." *Pinnacle Armor*, 923 F. Supp. 2d at 1239. Plaintiffs have failed to do so as to this document. The motion to add this document to the AR is therefore DENIED. |
| 81. | Sept. 4, 2015 E-mail chain beginning with email from P. Zedonis to numerous recipients, re: Sept 4 update: Fish Abundance in the lower Klamath River | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency; Document postdating the start of the 2015 FARs. | This document post-dates the final agency action and is properly not part of the record. | This document discusses Chinook migration patterns in the lower Klamath River. Plaintiffs argue that the content of these documents reveal that decision-making regarding the 2015 FARs continued after the formal decision(s) to make the 2015 FARs issued. The Court agrees. Unlike with Document # 15, where the document itself did not reveal that decision-making was contingent upon its content, Document # 81 expressly states that additional information (including, presumably, information contained in Document # 81) would be considered in "formulating the decision of when to implement the preventative pulse." The 2015 EA explains the parameters for triggering a preventative pulse flow:<br><br>- Due to the heightened alert for this year with the recent and continued low level infections of Ich observed, a 3- day pulse (including ramping up and down) peaking at 5,000 cfs in the lower Klamath River may be implemented when:<br>  - <u>the peak of fall run migration (first or second week of September) is identified in the lower Klamath River as indicated by tribal harvest</u>, and<br>  - low level infections of Ich (less than 30 Ich per gill) is found on three fall-run adult salmon (of a maximum sample size of 60) captured in the lower Klamath River in one day during the first or second week of September. Sampling and confirmation would follow the methods as described in NOAA and USFWS (2013). The benefit of the pulse is to enhance flushing/dilution of the river of parasites when the bulk of fall run adults are likely to be the lower river. This flow would also further improve water quality and help facilitate movements of adult salmon. |

• If rainfall increases the flow in the lower Klamath River to above 5,000 cfs this component would not be implemented.
• If needed, this action may avert the need to apply the emergency criteria.
• Implementation of a pulse flow will be within the Proposed Action volume of 51 TAF.

AR 1196 (emphasis added to highlight that the peak of fall run migration was a trigger for a 3-day pulse flow).

Document # 81 discusses the timing of the peak of fall-run migration in the lower Klamath and appears to suggest that considerable discretion is involved in determining when the "peak of fall run migration" trigger was deemed to be present prior to implementation of the September 2015 pulse flow. There appears to be no dispute that Federal Defendants' decision-makers were involved in the back-and-forth communication documented in these emails. This document is clearly germane to the claims in this case, appears to have been considered by decision-makers, and expressly reveals what appears to be ongoing decision-making (as opposed to rote application of purely objective factors) taking place after the decision date. Because Federal Defendants offer no basis for refusing to include this document in the record other than that it "post-dates" the decision, the motion is GRANTED as to this document.

| 82. | Sept. 7, 2015 E-mail chain beginning with email from P. Zedonis to numerous recipients, re: Sept 7 update: Fish Abundance and Preventative Pulse Flow | Document generated in the course of an agency's process for arriving at its decision; Other document directly or indirectly considered by the agency; Document postdating the start of the 2015 FARs. | This document post-dates the final agency action and is properly not part of the record. | Document # 82, an email chain dated September 7, 2015, appears to be discussing details about and concerns with implementation of the September 2015 pulse flow. In this document, one concerned communicator discusses discrepancies between planned and actual flow levels, suggesting a "pattern of undermining the recommendations of the best available science and short changing the fish on the flows and water volumes." The Court is at a loss as to how this part of Document # 82 could possibly be relevant to the claims in this case. In another portion of Document # 82, however, a communicator discusses how recent fish catch increases have triggered a process by which Reclamation "conducted outreach to the key technical team staff to help determine when to implement the preventative pulse flow." This further reveals that decision-making continued after the relevant formal decision. Again, the only argument Federal Defendants may make against inclusion of this document in the record is that it post-dates the relevant formal decision. For the same reason the motion was GRANTED as to Document # 81, the motion is GRANTED as to Document # 82, although Federal Defendants may choose to omit material that is not relevant to the disputed decision(s). |

**B.** **Plaintiffs' Arguments Regarding Certification of the Record.**

Plaintiffs argue that Federal Defendants' certification of the administrative record "confirms the

inadequacy" of the AR. Doc. 82 at 16. A court may conclude that the presumption of completeness is

rebutted where an agency's certification of the administrative record "on its face, appears to contain less than all the documents and materials directly or indirectly considered by the agency in making its decision." *Gill v. Dep't of Justice*, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015). In *Gill*, plaintiffs challenged a Department of Justice ("DOJ") standard that defined "suspicious activity" for purposes of triggering reporting such activity under a federally-funded anti-terrorism information sharing initiative. *Id.* at *1-2. Plaintiffs argued that DOJ certified the record under the wrong legal standard, certifying that the record included "information considered in the development" of the suspicious activity definition, instead of certifying inclusion of "all documents and materials directly or indirectly considered by the agency in making its decision." *Id.* at *3. The district court agreed, finding plaintiffs "sufficiently rebutted the presumption of completeness, and remanded the record to the agency, requiring a new search for "all documents and materials directly or indirectly considered." *Id.* at *6.[4]

Plaintiffs argue that a similar finding is warranted here. The certification provided in this case provides in relevant part:

> To the best of my knowledge, the index filed with the Court in this matter constitutes a true, correct, and complete index of the administrative record in this action. To the best of my knowledge, this index identifies all documents and materials directly or indirectly considered by the agency decision-makers in relation to the development of the Finding of No Significant Impact and Environmental Assessment, and in relation to the action challenged in the Complaint filed in the above-captioned matter, for 2015 Lower Klamath River Late Summer Flow Augmentation from Lewiston Dam that is mentioned in the Complaint in this matter.

Akroyd Decl., Ex. 1 (Doc. 76-1). Plaintiffs argue that this certification is insufficient because it makes no mention of compliance with the ESA or MSA or of the 2014 FARs. While this is true, the legal consequences of such a substantive omission are unclear. *Gill* does not control, as the record in this case does not reveal application of the incorrect legal standard. Put another way, the issue in *Gill* was whether the administrative agency applied the correct standard when searching its files for documents to

---

[4] The other arguably analogous case cited by Plaintiffs, *People of the State of Cal. ex rel. Lockyer v. U.S. Dept. of Agriculture*, No. C05-03508 EDL, 2006 WL 708914, at *3 (Mar. 16, 2006), follows a similar pattern.

include in the administrative record. The agency's certification attested to a search only for "information considered in the development" of the suspicious activity definition, instead of certifying inclusion of "all documents and materials directly or indirectly considered by the agency in making its decision." *Gill*, 2015 WL 9258075, at *3. The district court in *Gill* took issue with the <u>depth</u> of the search conducted, not the scope of the search vis-a-vis the decisions challenged.

Here, the certification does not raise issues of depth, as the certification in this case specifically mentions the correct standard: inclusion of "all documents and materials directly or indirectly considered by the agency decision-makers." Rather, Plaintiffs' concern is with the apparent scope of the certification and whether it reveals a failure of the AR to cover all of the issues raised in the operative complaint. Unlike issues of depth, which cannot easily be evaluated by way of a Court examination of the AR itself for completeness, Plaintiffs' concern over scope can be *evaluated on the present record. Critically, the AR produced plainly demonstrates that the agency* collected documents pertaining to the 2014 FARs, as a separate section of the AR is dedicated wholly to that action. A further review of the record reveals that ESA documents are also included in the AR. As discussed above, in connection with the ruling on Document #7, no documents related to MSA consultation exist. The certification in this case, while inartfully drafted, does not rebut the presumption of completeness.

## C.  <u>Plaintiffs' Request for a Privilege Log.</u>

Plaintiffs argue that Federal Defendants should be required to produce a privilege log identifying documents withheld from the AR under claim of privilege. Doc. 82 at 17. While district courts in the Northern District of California have required privilege logs in administrative record cases, *see, e.g., Gill*, 2015 WL 9258075, at *6-7, the only other district court in the Eastern District of California to address the question declined to do so. *See California v. U.S. Dep't of Labor*, No. 2:13-CV-02069-KJM, 2014 WL 1665290, at *13 (E.D. Cal. Apr. 24, 2014), In that case, the district court relied on *National Association of Chain Drug Stores v. U.S. Dep't of Health & Human Services*, in which a district court in the District of Columbia reasoned:

> Since deliberative documents are not part of the administrative record, an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld.
>
> ***
>
> Plaintiffs claim to seek a privilege log so that they can participate in the process of determining what documents are and are not part of the administrative record. However, the argument that a plaintiff and the Court should be permitted to participate in an agency's record compilation as a matter of course contravenes "the standard presumption that the agency properly designated the Administrative Record." To overcome the assumption that the agency properly designated the record, a party must make a "significant showing" that the agency has acted in bad faith. Plaintiffs here have not alleged any bad faith on the part of defendants, and absent such an allegation and showing, defendants' determination as to which materials are and are not part of the administrative record is conclusive.

631 F. Supp. 2d 23, 27-28 (D.D.C. 2009) (internal citations omitted). The Court finds this reasoning persuasive. To require a privilege log as a matter of course in any administrative record case where a privilege appears to have been invoked would undermine the presumption of correctness. This would shift the record compilation process too closely toward mechanisms employed in cases subject to regular civil discovery. The request to require the preparation of a privilege log is therefore DENIED.

**D.      Plaintiffs' "Relevant Factors" Argument.**

In the alternative, Plaintiffs argue that the disputed documents should be considered because they "demonstrate Reclamation ignored relevant factors to its decisions to make the FARs." Doc. 87 at 8. A reviewing court may consider information outside the record under "four narrowly construed circumstances":

> (1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency.

*San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-03 (9th Cir. 2014). However, it is inappropriate for the Court to address this argument, because this issue was raised for the first time in Reply. *Compare* Doc. 82 *with* Doc. 87; *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.

Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

## IV. **CONCLUSION AND ORDER**

For the reasons set forth above, Plaintiffs' motion is GRANTED as to Documents # 81 and 82 and DENIED in all other respects.

IT IS SO ORDERED.

Dated:   **June 23, 2016**                    **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES CHIEF DISTRICT JUDGE