# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAN LUIS & DELTA-MENDOTA WATER AUTHORITY and WESTLANDS WATER DISTRICT,**<br><br>Plaintiffs,<br><br>v.<br><br>**SALLY JEWELL,** *et al.***,**<br><br>Defendants,<br><br>**THE HOOPA VALLEY TRIBE; THE YUROK TRIBE; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; and INSTITUTE FOR FISHERIES RESOURCES,**<br><br>Defendant-Intervenors. | CASE NO. 1:15-CV-01290-LJO-GSA<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING FIRST THROUGH FIFTH CLAIMS AS MOOT AND REQUESTING SUPPLEMENTAL BRIEFING ON PLAINTIFFS' STANDING TO PURSUE SIXTH THROUGH EIGHTH CLAIMS** |

## I. INTRODUCTION

This case concerns the U.S. Bureau of Reclamation's ("Reclamation" or "the Bureau") decision to make certain "Flow Augmentation" releases ("FARs") of water in August 2014 ("2014 FARs") and 2015 ("2015 FARs") from Lewiston Dam, a feature of the Trinity River Division ("TRD") of the Central Valley Project ("CVP"). ECF No. 1. The stated purpose of FARs is to "reduce the risk of an adult fish kill in the lower Klamath River." Environmental Assessment, 2015 Lower Klamath River Late-Summer Flow Augmentation from Lewiston Dam, EA-15-04-NCAO (August 2015) ("2015 EA"), Administrative Record ("AR") 1189; AR 5170 (Decision Memorandum Re 2014 FARs). Plaintiffs, the San Luis & Delta Mendota Water Authority ("Authority") and Westlands Water District ("Westlands"), allege that by approving and implementing the 2014 and 2015 FARs, Reclamation and its parent agency, the U.S. Department of the Interior ("Interior") (collectively, "Federal Defendants"), acted in excess of

1

existing statutory authorities (First and Second Claims for Relief); violated reclamation law by delivering water as part of the 2015 FARs pursuant to the second proviso of Section 2 of the Act of August 12, 1955, Pub. L. No. 84-386, 69 Stat. 719 ("1955 Act"), without first entering into a contract for delivery of that water that meets the requirements of reclamation law and policy (Third Claim for Relief); violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, by, among other things, approving and implementing the 2014 and 2015 FARs without first preparing an Environmental Impact Statement ("EIS") (Fourth and Fifth Claim for Relief); and violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("MSA"), 16 U.S.C. §§ 1801 e*t seq.*, by implementing the 2015 FARs without first engaging in required consultation with relevant federal wildlife agencies (Sixth, Seventh, and Eighth Claims for Relief). ECF No. 1.

## II. BACKGROUND

This case follows on the heels of a closely related case, *San Luis & Delta Mendota Water Auth., et al. v. Jewell, et al.*, 1:13-cv-01232 LJO GSA ("*Jewell I*"), which involved similar claims challenging FARs in 2012 and 2013, a series of emergency motions filed and decided in the late summer of 2013 and 2014, as well as a highly complex round of motions for summary judgment, decided October 1, 2014. *See San Luis & Delta Mendota Water Auth. v. Jewell*, 52 F. Supp. 3d 1020 (E.D. Cal. 2014) ("*Jewell I* MSJ Order"), *aff'd in part and rev'd in part sub nom. by San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1221 (9th Cir. 2017). The *Jewell I* MSJ Order held that while the Trinity River Record of Decision ("TRROD") did set maximum limits on, as well as minimum requirements for, releases from TRD, because the TRROD was limited in geographic scope to the Trinity River basin, the TRROD's maximum flow limitations did not absolutely preclude Federal Defendants from releasing water from TRD above and beyond those maximums, if the releases were intended to benefit interests outside the Trinity River basin. 52 F. Supp. 3d at 1045-51. The *Jewell I* MSJ Order then examined the alternative sources of authority cited by Federal Defendants, including the first

proviso of Section 2 of the 1955 Act ("Proviso 1"), which states that the Secretary of the Interior is "authorized and directed to adopt appropriate measures to insure the preservation and propagation of fish and wildlife, including, but not limited to the maintenance of the flow of the Trinity River below the diversion point...." *Id*. at 1059-60. The *Jewell I* MSJ Order concluded that the authority provided by Proviso 1 was similarly limited to the Trinity River basin and therefore was capped in practical effect by the TRROD's maximum flow prescriptions. *Id*. at 1057-63. The Court noted the absence of any indication in the plain language or legislative history of the 1955 Act of intent to extend the reach of the Act beyond the Trinity River basin. Critical to the Court's reasoning was the fact that an important study that formed the underpinning of the TRROD indicated its recommendations, which were eventually incorporated into the TRROD, were "designed to fulfill fish and wildlife protection mandates of the 1955 Act." *Id*. at 1059. This unequivocal statement that the study underpinning the TRROD was designed to "fulfill" the mandates of Proviso 1 undercut the rational validity of Federal Defendants' position to the contrary in the prior lawsuit (and reiterated in this one) that Proviso 1 provides authority to make releases above and beyond the TRROD's maximums to benefit fish in the lower Klamath. *Id*. An appeal from this decision was timely taken.

In the late summer of 2014, Reclamation finalized plans to make FARs from the TRD to prevent a salmon kill on the lower Klamath River. AR 5170. Reclamation released a total of 64,000 acre-feet ("AF") from TRD storage in connection with the 2014 FARs. AR 1188.

Toward the end of the following summer of 2015, Reclamation again made plans to make FARs from the TRD. *See* AR 1187-1198. For this planned set of FARs, Reclamation prepared an EA pursuant to NEPA. AR 1182-1243 (dated August 18, 2015). The EA specifically relied upon both Proviso 1 (noting that the *Jewell I* MSJ Decision was on appeal) and, as an alternative basis for the FARs, the second proviso of the 1955 Act ("Proviso 2"), which provides that "not less than 50,000 acre-feet shall be released annually from the Trinity Reservoir and made available to Humboldt County and downstream users." AR 1191. The EA cited as support for this reliance a December 23, 2014 Opinion of

3

the Office of the Solicitor of the Department of Interior, which concluded that Proviso 2 represents a separate and independent limitation on the integration of the TRD, and thus the diversion of water to, the CVP. *See* AR 1189 (citing Solicitor's Opinion M-37030, *available at* https://www.doi.gov/sites/doi.opengov.ibmcloud.com/files/uploads/M-37030.pdf (last visited April 14, 2017)).

Shortly after the EA was released, Plaintiffs filed this lawsuit along with motions for a temporary restraining order and preliminary injunction on August 24, 2015. ECF Nos. 1, 2, 5. On August 26, 2015, the Court denied Plaintiffs' requests for injunctive relief, finding Plaintiffs' likelihood of success on the merits to be "far from clear" and that the "balance of the harms tips strongly in favor of allowing the FARs to proceed." ECF No. 45 at 6. The case proceeded, with the Court resolving a motion to complete the administrative record in June 2016. ECF No. 88. Opening briefs in connection with the now-pending cross-motions for summary judgment were filed in August 2016, with the final brief filed in early November 2016.

While the cross motions were under submission, in February 2017, the Ninth Circuit affirmed in part and reversed in part the *Jewell I* MSJ Decision, finding that Proviso 1 was unambiguous and "intended to delegate broad authority," including authority to make the FARs "to protect fish downstream from Lewiston Dam, which includes the lower Klamath River." *Haugrud*, 848 F.3d at 1231. Among other things, the Ninth Circuit addressed the asserted ESA claim, finding Plaintiffs lacked standing to bring that claim because they "have not demonstrated a reasonable probability that the alleged failure to conduct an [ESA] section 7 consultation will threaten their economic interests." *Id*. at 1234.

On February 24, 2017, the Court ordered the parties to submit a status report addressing the Court's tentative finding that, in light of *Haugrud*, "a substantial majority of the issues raised in the pending cross-motions for summary judgment may now be moot." ECF No. 119. The responsive joint status report was filed March 31, 2017. ECF No. 122.

## III. ANALYSIS

**A.      The First through Fifth Claims are Moot**

     **1.      Mootness Standard Generally**

An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Id*. (internal citations and quotations omitted). If the parties cannot obtain any effective relief, any opinion about the legality of a challenged action is impermissibly advisory. *Id*. "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal citation and quotation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id*. at 67.

"The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide." *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 874 (9th Cir. 2011). Mootness is evaluated on a claim-by-claim basis. *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994) (citing *Headwaters, Inc. v. Bureau of Land Management*, 893 F.2d 1012, 1015-16 (9th Cir. 1989) (separately addressing mootness as to different forms of relief requested)); *see also In re Pac. Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2009) (evaluating mootness on a claim-by-claim basis).

An otherwise moot claim may nevertheless be justiciable if one of three exceptions to the mootness doctrine applies: (1) where a plaintiff "would suffer collateral legal consequences if the actions being appealed were allowed to stand"; (2) where defendant voluntarily ceased the challenged practice; or (3) for "wrongs capable of repetition yet evading review." *Ctr. for Biological Diversity v.*

*Lohn*, 511 F.3d 960, 964-66 (9th Cir. 2007).

### 2. <u>Claims Challenging the Statutory Authority for FARs</u>

The Second Claim for Relief alleges that Federal Defendants acted unlawfully by relying on Proviso 1 to justify the 2014 FARs. *Id*. at ¶¶ 86-90. All parties agree that this claim is moot in light of the Ninth Circuit's decision in *Haugrud*, which directly refutes the legal theory underpinning the Second Claim. As a result, there is "no effective relief remaining for a court to provide," rendering this claim moot. None of the exceptions to the mootness doctrine applies: collateral consequences to Plaintiff are not apparent; Defendant did not voluntarily cease the challenged practice, rather, it expired of its own accord; and this is not a "wrong" capable of repetition yet evading review because the Ninth Circuit has deemed the implementation of FARs based on Proviso 1 to be <u>lawful</u>. Therefore, the Second Claim for Relief is moot and is dismissed WITH PREJUDICE.

The First Claim for Relief alleges that Proviso 2 does not provide legal authority to justify FARs, including the 2015 FARs, for which Reclamation explicitly relied upon Proviso 2 as its primary authority. ECF No. 1 at ¶¶ 71-85. Relatedly, the Third Claim for Relief alleges that, even if Proviso 2 does provide legal authority to justify FARs, the 2015 FARS are still unlawful because: (1) "Reclamation has not entered [into] a contract with Humboldt County or any other downstream water user for CVP water supply that meets the requirements of reclamation law and policy"; (2) "no downstream water user, including Humboldt County, can demonstrate that it will make beneficial use of the water in accordance with the requirements California water law, because neither Humboldt County nor any other downstream water user has a water right permit for the use of this water, and it is not within the permitted place of use in the water rights permits for the TRD"; and (3) "Reclamation has no authority to abandon water diverted and stored by the TRD." *Id*. at ¶ 92. Plaintiffs and Federal Defendants agree that both the First and Third Claims for Relief are now moot because, even if the Court were to find merit to the claim, it cannot grant effective relief because Reclamation would still have authority to make the releases under Proviso 1. ECF No. 122 at 1-2.

Defendant-Intervenor the Hoopa Valley Tribe asserts that the First Claim for Relief is not moot, arguing that Reclamation did not rely on authorities other than Proviso 2 to justify the 2015 FARs. *Id*. at 3. This is incorrect. The EA for the 2015 FARs specifically quotes Proviso 1:

> The Trinity River Division Central Valley Project Act of 1955 (P.L.84-386) provides the principal authorization for implementing the Proposed Action. Specifically, Section 2 of the Act limits the integration of the Trinity River Division with the rest of the Central Valley Project and gives precedence to in-basin needs, including that "<u>the Secretary is authorized and directed to adopt appropriate measures to insure preservation and propagation of fish and wildlife…</u>" and "that not less than 50,000 acre-feet shall be released annually from the Trinity Reservoir and made available to Humboldt County and downstream users."

AR 1191 (emphasis added). In addition, a footnote to the above language in the EA specifically notes that the *Jewell I* MSJ Order was being appealed at the time the EA issued. *Id*. at AR 1191 n. 1. Because Federal Defendants did rely on Proviso 1 as an alternative source of authority for the 2015 FARs, the Court can provide "no effective relief." Moreover, as with the Second Claim for Relief, none of the exceptions to the mootness doctrine applies. The Court agrees with Plaintiffs that the First and Third Claims should be dismissed WITHOUT PREJUDICE to a future challenge should a future FARs be premised solely on Proviso 2.

**B.**     **<u>NEPA Claims</u>**

The Fourth Claim for Relief alleges that Federal Defendants acted unlawfully by implementing the 2015 FARs pursuant to an EA that fails to meet the requirements of NEPA, and by failing to prepare an EIS before proceeding with the 2015 FARs. ECF No. 1 ¶¶ 105-110. The Fifth Claim for relief similarly alleges that Federal Defendants acted unlawfully by failing to prepare either an EA or an EIS prior to making the 2014 FARs, and by instead purporting to follow "emergency" NEPA procedures. *Id*. at ¶¶ 47, 111-121.

The challenges asserted in the Fourth and Fifth Claims for Relief—implementing the 2014 and 2015 FARs without following required NEPA procedures—are technically moot because the 2014 and 2015 FARs expired of their own accord. The only mootness exception that plausibly could apply is the

one available for "wrongs capable of repetition yet evading review." This exception

> permit[s] suits for prospective relief to go forward despite abatement of the underlying injury [in] exceptional[1] situations where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (internal citations and quotations omitted); *see also Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 450 (2007); *San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 703 (9th Cir. 2012); *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 870 F. Supp. 2d 943, 959 (E.D. Cal. 2012).

The first factor—whether the duration of the challenged action is too short to allow for complete litigation—is present, as the FARs themselves only last for a few weeks at a time. While it may have been possible to file and resolve a motion for emergency injunctive relief during that timeframe, it is not possible to litigate <u>fully</u> challenges such as those raised in the Complaint in such a short period of time. *See Meyer v. Grant*, 486 U.S. 414, 417 (1988) (where state law permitted only six months to obtain necessary signatures to place an initiative on the ballot, challenge to other aspects of the state's initiative procedure could not be litigated fully before time period expired); *see also Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) (suggesting processes lasting from between 12 and 17 months are likely to "evade review" before completion).

"Under the 'capable of repetition' prong of the exception to the mootness doctrine, [a plaintiff has] the burden of showing that there is a reasonable expectation that [it] will once again be subjected to the challenged activity." *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). "Specifically, the plaintiff must establish a demonstrated probability that the same controversy will recur involving the same litigants." *Id.* (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

---

[1] In line with the Supreme Court's explanation that this exception only applies in exceptional cases when the two stated conditions are met, the Ninth Circuit only applies the exception in "extraordinary cases." *West Coast Seafood Processors Ass'n v. Natural Res. Def. Council*, 643 F.3d 701, 704 (9th Cir. 2011).

8

Federal Defendants argue in their cross-motion for summary judgment and the recently filed Joint Status Report that the NEPA procedures utilized in connection with the 2014 and 2015 FARs are not likely to be repeated because Reclamation is preparing a programmatic EIS and Record of Decision ("ROD") that is expected to govern any future FARs. ECF No. 105-1 at 19-21; ECF No. 122 at 3. The Court takes judicial notice of the fact that in October 2016 a Draft EIS issued in connection with the Bureau's Long-Term Plan to Protect Adult Salmon in the Lower Klamath River. *See* U.S. Dept. of Interior, Bureau of Reclamation, Long-Term Plan to Protect Adult Salmon in the Lower Klamath River, Draft Environmental Impact Statement ("Draft Long-Term Plan EIS") (*available at* https://www.usbr.gov/mp/nepa/documentShow.cfm?Doc_ID=26935 (last visited April 14, 2017)). It also appears that a Final EIS issued in January 2017. *See* U.S. Dept. of Interior, Bureau of Reclamation, Long-Term Plan to Protect Adult Salmon in the Lower Klamath River, Final Environmental Impact Statement ("Final Long-Term Plan EIS") (*available at* https://www.usbr.gov/mp/nepa/nepa_projdetails.cfm?Project_ID=22021 (last visited April 14, 2017)). The Proposed Action in the Draft Long-Term Plan EIS includes FARs, described as follows:

> The Proposed Action (Alternative 1) includes supplemental flows from Lewiston Dam to prevent a disease outbreak in the lower Klamath River in years when the river's flow is projected to be less than 2,800 cubic feet per second (cfs). The water for these supplemental flows would come from water stored in Trinity Reservoir, to support "appropriate measures for the preservation and propagation of fish and wildlife" (Proviso 1) with releases of "not less than 50,000 acre-feet" for Humboldt County and downstream water users (Proviso 2), as provided in the 1955 Trinity River Division Act.

Draft Long-Term Plan EIS at ES-3. The Final Long-Term Plan EIS identifies the Proposed Action as the chosen alternative. Final Long-Term Plan EIS at 1-1. The Long-Term Plan is designed to be in place through 2030. *See id*. at 2-7 (identifying 2017 to 2030 as the time period covered by the analysis presented in the Final Long-Term Plan EIS).

Plaintiffs responded in their Reply in Support of Motion for Summary Judgment that the alleged NEPA violations are capable of repetition despite the Long-Term Plan EIS process. ECF No. 113 at 3-4.

9

Plaintiffs point out, for example, that in the late summer of 2016, Reclamation once again followed the process utilized in 2015, by issuing an EA and Finding of No Significant Impact ("FONSI") prior to making FARs in 2016.

The Court does not view this as evidence of likely repetition in 2017 and beyond. As of the summer of 2016, the Long-Term Plan EIS was not even in draft form, necessitating an independent NEPA review. Now, in light of the issuance of a Final Long-Term Plan EIS, repetition of the procedure used in 2015 and 2016 appears unlikely.

Plaintiffs also argued that even operating under a Long-Term Plan EIS, "it is still reasonable to expect that Reclamation may make FARs that are outside the scope of that EIS, and resort back to its prior approach of preparing a one-off EA and FONSI to analyze impacts in a particular year." *Id.* at 4. This is pure speculation. It is Plaintiffs' burden to "establish a demonstrated probability that the same controversy will recur involving the same litigants." *Schmidt-Wenzel*, 766 F.2d at 1390. The record reveals no suggestion that any recent FARs exceeded the range of FARs contemplated by the Preferred Alternative in the Final Long-Term Plan EIS.

Finally, Plaintiffs point out that the Long-Term Plan is expected to be in effect only through 2030, and suggest that it is therefore "unclear what approach Reclamation may take regarding NEPA compliance for the FARs" in that distant future. *Id.* Again, this fails to satisfy Plaintiffs' burden to "establish a demonstrated probability that the same controversy will recur involving the same litigants." *Schmidt-Wenzel*, 766 F.2d at 1390. Lack of perfect clarity as to what will happen with California water policy in 2030 should be expected; it is far from a "demonstrated probability" that the controversy identified in the Complaint will recur.

In light of the nature of the Final Long-Term Plan EIS, as well as Federal Defendants' own representations, *see* ECF No. 105-1 at 20, the Court concludes that Plaintiffs have failed to meet their burden to establish a demonstrated probability that the same controversy—in this case the allegedly unlawful NEPA procedures utilized in the context of either the 2014 or 2015 FARs—will recur.

10

Therefore, no exception to the mootness doctrine applies.

The Fourth and Fifth Claims are DISMISSED AS MOOT. This dismissal is WITHOUT PREJUDICE to a renewed claim supported by a showing based upon new facts that the controversy is likely to recur.

**C.      ESA/MSA Claims**

The Sixth Claim for Relief alleges that Federal Defendants violated Section 7 of the ESA by failing to consult properly with the National Marine Fisheries Service ("NMFS") prior to implementing the 2014 and 2015 FARs. ECF No. 1 at ¶¶ 122-131. The Seventh and Eighth Claims for Relief allege that Federal Defendants acted unlawfully by failing to comply with a similar consultation requirement contained within the MSA. *Id*. at ¶¶ 132-149.

The Ninth Circuit's *Haugrud* decision affirmed this Court's finding that Plaintiffs lacked standing to bring an ESA claim that was materially indistinguishable from the Sixth Claim for Relief alleged here. 848 F.3d 1232-34. The Ninth Circuit succinctly summarized the relevant standards in *Haugrud*:

> Generally, "[t]o establish Article III standing, a plaintiff must demonstrate that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 782 (9th Cir. 2014) (en banc) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 168 (2000)). However, this standard is softened when a plaintiff asserts a "violation of 'a procedural right.' " *Id*. at 782-83 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992)). "A showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redressibility." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008). To establish a procedural "injury in fact, [a plaintiff] must allege ... that (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004)).

*Id*. at 1232.

The Ninth Circuit concluded that the *Jewell I* plaintiffs' ESA claim—that Reclamation implemented FARs in 2013 without conducting a formal section 7 consultation for ESA-listed fish species—constituted "a procedural injury for standing purposes." *Id*. at 1232-33. *Haugrud* then focused its analysis on whether the *Jewell I* plaintiffs had shown "it is reasonably probable that the challenged action will threaten their concrete interests." *Id* at 1233 (internal citation omitted). That analysis began with a review of the *Jewell I* plaintiffs' showing of economic harm:

> The Water Contractors generally assert that BOR's failure to conduct a section 7 consultation threatens their concrete economic interest "in ensuring the continued delivery of water to their members." More specifically, the Water Contractors allege that the 2013 flow augmentation release would reduce the total volume of water available to maintain cold water temperatures in the Sacramento River. In support of this assertion, the Water Contractors cite one of their experts that maintains that the reduction of cold water storage "may adversely impact winter-run and/or spring run salmon egg incubation in 2013, and in 2014 if the winter of 2014 does not result in sufficient flows to refill the reservoirs," because incubating salmonid eggs can be harmed if the water temperatures exceed fifty-six degrees. The Water Contractors next assert that, if the salmonid eggs are harmed and the salmonid populations in the Sacramento River shrink, third-party agencies will place more stringent regulations on CVP operations and restrict the amount of water delivered to its members. Finally, the Water Contractors assert such regulations and water restrictions will economically harm them because San Luis's member districts (including Westlands Water District) rely on CVP water to irrigate farms, employ farm workers, and generally maintain their communities.

*Id*.

The Ninth Circuit concluded that the "posited series of events that must occur before the [asserted] economic harm is realized is both too uncertain and too remote to constitute a reasonably probable threat of injury." *Id*. Specifically, the record set forth "an attenuated chain of conjecture that relies on a series of contingencies in weather and water temperature." *Id*. (internal citation and quotation omitted). In addition, "the allegation that third-party agencies will eventually impose more regulations on CVP water" was deemed "speculative at best," particularly in light of the fact that the only record evidence offered in support of this assertion was a declaration that discussed CVP regulations put in place in the 1990s. *Id*. That declaration regarding past regulations was "insufficient to show a credible

12

threat that third-party agencies will increase regulations on CVP water at some point in the future." *Id.* (internal citation and quotation omitted). Moreover, the asserted economic interests were found not "fairly traceable" to Reclamation actions, because the assertion relied "on conjecture about the behavior of other parties," *id.* (internal citation and quotation omitted), which constituted an "independent action of some third party not before the court," that "break[s] the causal link" between the flow augmentation release and the Water Contractors' alleged economic harm. *Id.* at 1233-34 (citing *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 950 (9th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560)).

The Ninth Circuit's holding in *Haugrud* necessarily relied upon the record in *Jewell I*. In the present case, to establish standing at the summary judgment phase, Plaintiffs have provided various fact declarations, all submitted prior to the issuance of the *Haugrud* decision. *See* ECF No. 99 at 13 (citing First Declaration of Thomas Boardman, ECF No. 9; Second Declaration of Thomas Boardman , ECF No. 92; Declaration of Russ Freeman, ECF No. 93; Declaration of Ara Azhderian, ECF. No. 98). Upon preliminary review, it appears that the showing presented in these declarations may warrant a finding that Plaintiffs lack standing to pursue their ESA and MSA claims in this case, following the reasoning of *Haugrud*. However, the Court believes its decision-making would be aided by supplemental briefing on how the present record should be interpreted in light of *Haugrud*.

## IV. CONCLUSION

For the reasons set forth above:

(1) The Second Claim for Relief is DISMISSED AS MOOT WITH PREJUDICE;

(2) The First and Third Claims for Relief are DISMISSED AS MOOT WITHOUT PREJUDICE to a future challenge should a future FARs be premised solely on Proviso 2; and

(3) The Fourth and Fifth Claims for Relief are DISMISSED AS MOOT WITHOUT PREJUDICE to a renewed claim supported by a showing based upon new facts that the controversy is likely to recur.

13

In addition, because the *Haugrud* decision calls into question whether Plaintiffs have standing to pursue the Sixth, Seventh, and Eighth Claims for Relief, the Court requests supplemental briefing on how the present record should be interpreted in light of *Haugrud*. Plaintiffs shall submit a supplemental brief no longer than ten pages in length on this topic on or before May 12, 2017. Federal Defendants may file a response of equal length on or before May 26, 2017. Defendant-Intervenors may file responses no longer than five pages in length on or before June 2, 2017, but only if Defendant-Intervenors' responses present arguments that do not repeat those made by other parties.

IT IS SO ORDERED.

Dated: **April 17, 2017**             /s/ Lawrence J. O'Neill  
                                                   UNITED STATES CHIEF DISTRICT JUDGE